IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

DIEGO TEOYOTL SERRANO,

Petitioner,

v.

WARDEN, SAN JUAN STAGING
FACILITY, GARRETT J. RIPA,
MIAMI FIELD OFFICE DIRECTOR
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT AND
REMOVAL OPERATIONS; TODD
M. LYONS, ACTING DIRECTOR
OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT;
MARK WAYNE MULLIN,
SECRETARY OF THE
DEPARTMENT OF HOMELAND
SECURITY; TODD BLANCHE,
ATTORNEY GENERAL OF THE
UNITED STATES, IN THEIR
OFFICIAL CAPACITIES,

Defendants.

CIV. NO.: 26-1246 (SCC)

**OPINION AND ORDER**

Pending before the Court is Petitioner Diego Teoyotl-Serrano's ("Mr. Teoyotl-Serrano") Petition for Writ of Habeas Corpus (the "Petition"), Docket No. 1, and Emergency Motion for Temporary Restraining Order (the "TRO"), Docket No. 2. For the reasons set forth below, the Court **GRANTS** the TRO

and **HOLDS IN ABEYANCE** the Petition.  Further, the Court hereby **ORDERS** that the United States, its agencies, and employees shall not transfer Mr. Teoyotl-Serrano outside of the jurisdiction of Puerto Rico so that he can be afforded the bond hearing currently scheduled for April 30, 2026, Docket No. 1, pg. 2, before an Immigration Judge under the Department of Justice's Executive Office for Immigration Review ("EOIR") in Puerto Rico.

## I.  BACKGROUND

Mr. Teoyotl-Serrano is a "citizen and national of Mexico, who entered the United States sometime in the year 2006 without undergoing proper inspection." *Id.* at pg. 1. Mr. Teoyotl-Serrano is the caregiver of Ms. Elisa Gaya Vázquez ("Ms. Gaya-Vázquez"), his wife of over 25 years. *Id.* at pg. 5, ¶ 22. Back in 2020, Ms. Gaya-Vázquez filed an I-130 Form, or "Petition for [Noncitizen] Relative," with the United States Citizenship and Immigration Services ("USCIS") on Mr. Teoyotl-Serrano's behalf.  Docket No. 2-2.  That petition was approved. *Id.*

On April 22, 2026, Mr. Teoyotl-Serrano arrived at the Puerto Rico Police Headquarters in Mayagüez, Puerto Rico. Docket No. 1, pg. 6. He went there after a local police officer instructed him to report for a vehicle inspection. *Id.* Once he arrived, he was detained by Immigration and Customs Enforcement agents, who appeared to be waiting for him. *Id.*

Mr. Teoyotl-Serrano is currently detained at the General Services Administration Processing Center in Puerto Rico. *Id.* at pg. 3.

On April 27, 2026, Mr. Teoyotl-Serrano filed the Petition. *Id*. There, he claims that his detention violates his substantive and procedural due process rights under the Fifth Amendment to the United States Constitution, as well as his access to counsel and conditions of confinement of the same. *Id.* at pgs. 9—12. He also seeks a TRO prohibiting his transfer out of the District of Puerto Rico until he receives a bond hearing by a neutral decision maker and his petition for writ of habeas corpus is reviewed by the Court. Docket No. 2, pg. 5. Importantly, the urgency in his request is rooted in his understanding that he will be transferred out of the jurisdiction today, that is, before his bond hearing scheduled for April 30, 2026, takes place.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65(b) controls this issuance of a TRO, which may be issued *ex parte* and is of limited duration since it may remain in effect for up to 14 days. *See* Fed. R. Civ. P. 65(b).[1] However, like a preliminary injunction, a TRO is "an extraordinary and drastic remedy

---

[1] Rule 65(b)(2) empowers the Court to extend the duration of the TRO "for a like period or [if] the adverse party consents to a longer extension." *See* Fed. R. Civ. P. 65(b)(2).

that is never awarded as of right." *Peoples Fed. Sav. Bank v. People's United Bank*, 672 F.3d 1, 8–9 (1st Cir. 2012) (quoting *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011)). In order for a court to grant a TRO, a plaintiff "'must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that the injunction is in the public interest.'" *Id.* at 9 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).[2] The movant "bears the burden of establishing that these four factors weigh in its favor." *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006) (citing *Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003)).

### III. ANALYSIS

#### a. Likelihood of Success on the Merits

The INA empowers the Government to detain certain noncitizens, either on a mandatory or discretionary basis. Two statutory provisions control this process: 8 U.S.C. §§ 1225

---

[2] Rule 65(c) instructs "the movant [to] give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the Court will not order Mr. Teoyotl-Serrano to do so here. *See Int'l Assoc. of Machinists and Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir. 1991) (recognizing the existence of "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond").

and 1226.  Section 1225 governs the detention of noncitizens "who are applicants for admission or otherwise seeking admission" to the United States.  *Id.* § 1225(a)(3).  Under Section 1225, if a noncitizen is deemed inadmissible "the [noncitizen] shall be detained for a [removal] proceeding under section 1229a."  *Id.* § 1225(b)(2)(A).

In contrast, Section 1226 "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodríguez Díaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Noncitizens who are "arrested and detained pending a decision on [their] remov[al]" face three discretionary outcomes as to their detention: the Attorney General "may continue to detain the arrested [noncitizen]"; "release the [noncitizen] on bond of at least $1,500"; or "release the [noncitizen] on conditional parole."  8 U.S.C. § 1226(a).  However, if a noncitizen is involved in specific enumerated criminal activities, their detention is mandatory.  *Id.* § 1226(c)(1).  Importantly, unlike Section 1225, "noncitizens detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing."  *Brito v. Garland*, 22 F.4th 240, 244 (1st Cir. 2021); *see also Rodríguez Díaz*, 53 F.4th at 1202 (noting that Section 1226(a) provides "extensive procedural protections [such as] an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to

appeal, and the right to seek a new hearing when circumstances materially change.").

Here, Mr. Teoyotl-Serrano entered the country without authorization in 2006, has an approved I-130 petition, and was arrested and detained in Puerto Rico. Given that Section 1226(a) governs the detention of noncitizens who are arrested and detained while residing in the United States, and Mr. Teoyotl-Serrano "has no history of violence and no pending criminal charges," Docket No. 1, pg. 6, which could otherwise subject him to the mandatory detention exception, at this time, the Court finds that its discretionary detention regime is applicable here.

As noted, Section 1226(a) entitles a noncitizen to an initial bond hearing, during which the Government bears the "burden of proving either dangerousness or flight risk in order to continue detaining [the noncitizen]." *Doe v. Tompkins*, 11 F.4th 1, 2 (1st Cir. 2021). Mr. Teoyotl-Serrano alleges that the Government justifies the detention of immigrants and the denial of their entitlement to a bond hearing pursuant to a recent Board of Immigration Appeals ("BIA") decision. Docket No. 1, pg. 2 (referencing *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220–28 (BIA 2025) (holding that Immigration Judges lack jurisdiction to consider a bond request filed by noncitizens who are present in the United States without admission)). However, district courts have

routinely rejected *Matter of Yajure Hurtado*'s interpretation and upheld the right to a bond hearing under circumstances akin to those of Mr. Teoyotl-Serrano. *See, e.g., Sampiao v. Hyde*, 799 F. Supp. 3d 14, 29 n.11 (D. Mass. 2025); *Elias Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); *Lora-Salazar v. Ripa*, No. 26-CV-1014 (D.P.R. Jan. 13, 2026) (Docket Nos. 5, 13); *González-Rucci v. González-Ramos*, No. 26-CV-1045 (D.P.R. Jan. 29, 2026) (Docket No. 12).  Since Mr. Teoyotl-Serrano has shown that he is entitled to a bond hearing as to his detention, and he has represented that one has been scheduled for April 30, 2026, the Court finds that he has demonstrated a strong likelihood of success on the merits.[3]

### b. Irreparable Harm

"[An] injunction should issue only where [it is] essential in order effectually to protect [] rights against injuries otherwise irremediable."  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (quoting *Cavanaugh v. Looney*, 248 U.S. 453, 456 (1919)).  Here, the "irremediable" harm

---

[3] Admittedly, the record shows that Mr. Teoyotl-Serrano is concerned that the Immigration Judge may not act as a neutral decision maker. Docket No. 1, pg. 2. He claims that a series of internal policies and the BIA's decision in *Matter of Yajure Hurtado* will instead control the decision-making process. *Id.* at pgs. 8—9. The Court understands Mr. Teoyotl-Serrano's concerns, but the Court's ruling today is limited to deciding the matter of whether he is entitled to a bond hearing and does not instruct another judge on how to rule on a specific matter. The Court, however, trusts that the Immigration Judge will apply and remain true to the rule of law.

would be threefold: detention; removal from this Court's jurisdiction pending the habeas corpus proceedings; and the subsequent consequences that such removal would have on Mr. Teoyotl-Serrano's person and rights. Further, due to the apparently impending transfer out of this jurisdiction, the question of whether the April 30, 2026 bond hearing will take place remains unanswered. Without a bond hearing, Mr. Teoyotl-Serrano faces a potentially prolonged period of detention, depriving him of his liberty.  If the transfer reportedly scheduled for today takes place, it is likely that Mr. Teoyotl-Serrano will be transferred to an immigration detention center in the mainland United States, which prompts concern for his constitutional right to access to counsel.  Further, Mr. Teoyotl-Serrano would also face a substantial risk of confinement in facilities that raise health, safety, and due process concerns.  As such, the Court finds this factor weighs in Mr. Teoyotl-Serrano's favor.

### c.  Balance of Equities and Public Interest

The remaining TRO factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The First Circuit has repeatedly held that where, as here, the Government is likely acting contrary to the plain text of federal law, the balance of equities weighs against it. *See New York v. Trump*, 133 F.4th 51, 71 (1st Cir. 2025); *New Jersey v. Trump*, 131 F.4th 27, 40–41 (1st Cir. 2025).

Relatedly, it is well-settled that "there is generally no public interest in the perpetuation of unlawful agency action." *Rhode Island v. Trump*, 155 F.4th 35, 50 (1st Cir. 2025). In conclusion, the Court finds that the remaining factors also weigh in Mr. Teoyotl-Serrano's favor.

## IV. CONCLUSION

In sum, this Court **GRANTS** the TRO and **HOLDS IN ABEYANCE** the Petition. This Court **ORDERS** that the Government shall not transfer Mr. Teoyotl-Serrano outside of Puerto Rico and that he be granted a bond hearing before an Immigration Judge no later than April 30, 2026, as has been scheduled. The Government shall inform by **May 12, 2026** (within 14 days of the issuance of this Opinion and Order) whether such bond hearing has been held and its outcome. To be clear, this Order grants only temporary injunctive relief and does not adjudicate the merits of the Petition.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of April 2026.

S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE